

**CIVIL COMPLAINT FORM TO BE USED BY A *PRO SE* PRISONER**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

André  Jacobs   054268
**Full Name of Plaintiff          Inmate Number**

v.

Harrisburg Police Department
**Name of Defendant 1**  Thomas C. Carter

John Doe Detective #1
**Name of Defendant 2**

John Doe Detective #2
**Name of Defendant 3**

Penn Live News
**Name of Defendant 4**

Sesquehanna Twp Police
**Name of Defendant 5**  Department,

(Print the names of all defendants.  If the names of all
defendants do not fit in this space, you may attach
additional pages. Do not include addresses in this
section).

Civil No. 1:24 CV 2053  WIA
(to be filled in by the Clerk's Office)

(X) Demand for Jury Trial
(___) No Jury Trial Demand

**FILED**
HARRISBURG, PA

NOV 26 2024

PER_____
**DEPUTY CLERK**

I.    **NATURE OF COMPLAINT**

Indicate below the federal legal basis for your claim, if known.

X    Civil Rights Action under 42 U.S.C. § 1983 (state, county, or municipal defendants)

___    Civil Rights Action under Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388
(1971) (federal defendants)

___    Negligence Action under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346, against the
United States

Caption (continued from page 1) "Defendants"

Jane Doe #1
Name of Defendant 6

Francis T. Chardo
Name of Defendant 7

John Doe Police officer #3
Name of Defendant 8

Jenna Wise
Name of Defendant 9

Jane Doe #2
Name of Defendant 10

2

**II.    ADDRESSES AND INFORMATION**

**A.    PLAINTIFF**

Andre Lamont Jacobs

Name (Last, First, MI)

054268

Inmate Number

Dauphin County Prison ("DCP")

Place of Confinement

501 mall Rd.

Address

Harrisburg, PA 17111

City, County, State, Zip Code

Indicate whether you are a prisoner or other confined person as follows:

X    Pretrial detainee

___    Civilly committed detainee

___    Immigration detainee

___    Convicted and sentenced state prisoner

___    Convicted and sentenced federal prisoner

**B.    DEFENDANT(S)**

Provide the information below for each defendant. Attach additional pages if needed.

Make sure that the defendant(s) listed below are identical to those contained in the caption.   If incorrect information is provided, it could result in the delay or prevention of service of the complaint.

Defendant 1:

Harrisburg Police Department

Name (Last, First)

Thomac C. Carter

Current Job Title

Municipality

Current Work Address

123 Walnut street #2N. Harrisburg, PA 17101

City, County, State, Zip Code

Defendant 2:

_John Doe_

Name (Last, First)

_Detective_

Current Job Title   .

_____

Current Work Address

_123 walnut street #217 , Harrisburg, PA 17101_

City, County, State, Zip Code


Defendant 3:

_John Doe_

Name (Last, First)

_Detective_

Current Job Title

_123 walnut street #217_

Current Work Address

_Harrisburg , PA   17101_

City, County, State, Zip Code


Defendant 4:

_Penn Live News_

Name (Last, First)


Current Job Title

_2020 Technology pkwy   ste. 300_

Current Work Address

_Mechanicsburg, PA 17050_

City, County, State, Zip Code


Defendant 5:

_Susquehanna Twp Police Department_

Name (Last, First)

_Municipality_

Current Job Title

_1900 Linglestown Road_

Current Work Address

_Harrisburg , PA  17110_

City, County, State, Zip Code

Defendant 6
Jane Doe
Police officer
1900 Linglestown Road
Harrisburg, PA 17110

Defendant 7
Francis T. Chardo
District Attorney
101 Market Street
Harrisburg, PA 17101

Defendant 8
John Doe
Police officer
1900 Linglestown Road
Harrisburg, PA 17110

Defendant 9
Jenna wise
Journalist
2020 Technology PKWY ste. 300
Mechanicsburg, PA 17050

4 (b)

Defendant 10
Jane Doe


Unknown
Harrisburg, PA

4 (C)

### III.    STATEMENT OF FACTS

State only the facts of your claim below.  Include all the facts you consider important.  Attach additional pages if needed.

A.    Describe where and when the events giving rise to your claim(s) arose.

Harrisburg, Pennsylvania . July 2023 - April 2024

B.    On what date did the events giving rise to your claim(s) occur?

July 9, 2023

C.    What are the facts underlying your claim(s)? (For example:  What happened to you? Who did what?)

MURDER ON BALM STREET

1. On July 9, 2023 Morah Crittenden allegedly open·fired on someone on Balm street and was shot dead in the process.

2. At all times throughout these events, Plaintiff was recovering from two broken legs and could not walk without crutches or leg braces.

3. At the time of his death Morah lived on the 2600 block of walnut street along with his cousin Christopher Jackson, Plaintiff and Morah's house guest (girlfriend) Aaliyah Keef.

III (c) STATEMENT OF FACTS (continued)

4. Plaintiff owned two cars, a Mercedes Benz 5500 and a Nissan Muranno.

5. Prior to his death, Morah approached Plaintiff at their home on Walnut Street saying his girlfriend (keef) had his car and he needed a ride to Balm street. Having dropped him off in that area before Plaintiff thought nothing of it and agreed on the condition that Morah drive the Muranno.

6. Morah drove to Balm street with Plaintiff in the backseat, abruptly stopped in the middle of the street, put the car in park and jumped out of the drivers side door.

7. Upon exiting the vehicle, Morah allegedly pulled a "ski-mask" over his face and began shooting.

8. Morah exchanged fire and was shot dead.

9. Stuck in the cross-fire and not seeing Morah Plaintiff climbed in the drivers seat and drove home. and told keef he thought Morah was involved in a shooting.

6

STATEMENT OF FACTS (continued)

## PLAINTIFF'S NOTORIETY

10. Paragraphs 1-9 of this complaint are incorporated herein by reference as if set forth in full detail.

11. Plaintiff is a 42 year old African American male from Harrisburg, Pennsylvania.

12. Plaintiff is a well known community activist and social media influencer.

13. Plaintiff is "followed" by celebrities such as Nick Cannon and has been supported on Twitter by celebrities such as Danny Glover, Joe Pechi, and many others.

14. Plaintiff's social media videos have garnered over 25 million views, extending beyond the United States of America to other countries.

15. Many of plaintiff's videos are somewhat controversial, addressing police brutality, police corruption, prison conditions, and general disparities in treatment of the lower class citizens of the world.

16. Plaintiff has participated in sanctioned and highly publicized protests to prison conditions at Dauphin County Prison, spoke at townhall meetings before police chiefs and other public officials, organized boxing training for youth, spoke at the Boys & Girls Club and collaborated with numerous organizations and public officials for community events.

17. Plaintiff is a 5-time self-published book author who publicly promoted his books on social media, Kindle, Amazon, and at book fairs and other community events.

18. At the time defendants criminally charged plaintiff in this matter plaintiff was preparing for a 100-city book tour and had pending in federal court a petition for early release based largely on that campaign.

8

<u>ARMED ASSAULT & "STOLEN" CAR PLOY</u>

19. Paragraphs 1-18 of this complaint are incorporated herein by reference as if set forth in full detail.

20. On or about July 12, 2023, Defendants Detective John Does #1 & 2 entered into a conspiracy to coerce Plaintiff to speak about Morah's death "by nook or crook".

21. Defendant Detective John Doe 1 circulated a memo within the police department to apprehend Plaintiff on sight, by force.

22. Following Defendant Detective John Doe's directive, a 10-car Harrisburg Police force swarmed Plaintiff at gun point in the parking lot of Rite Aide on 3rd & M<sup>c</sup>Clay street threatening to shoot Plaintiff

23. Present in the car with Plaintiff was Plaintiff's dog, (a Cane Corso) and a female

24. Plaintiff was informed that he was accosted because the car he was driving was reported stolen by Morah's sister Defendant Jane Doe #2.

9

25. On information and belief, the car was leased by Norah and Defendant Jane Doe #2 had no legal right to the car.

26. Defendant Jane Doe #2 knew the falsity of her report and was motivated by a desire to see Plaintiff punished for her brother's death.

27. Defendants John Doe #4-12 furthered Defendant Jane Doe #2's agenda with negligence and disregard to Plaintiff's life and rights.

28. Plaintiff was removed from the car while the car was searched.

29. Plaintiff was handcuffed behind the back and made to stand in the Rite Aide parking lot on a hot summer day while a crowd of 20+ people formed and began streaming the encounter on Facebook and other social media platforms.

30. While Plaintiff was standing outside the police car, an officer was on the phone with Defendant Detective #1 identifying Plaintiff.

10

31. Defendant Detective John Doe #1 told the officer to tell Plaintiff he was wanted for questioning in Morah's death.

32. When Plaintiff agreed to speak with Detectives, the handcuffs were removed, Plaintiff was given the Detective's contact card and released with the car.

## THE INTERVIEW

33. Paragraphs 1-32 of this complaint are incorporated herein by reference as if set forth in full detail.

34. On or about July 13, 2023 Plaintiff went to the Harrisburg Police Station to meet with Defendant's Detective #'s 1 & 2.

35. Plaintiff spoke with Defendants John Doe #'s 1 & 2 at the Police Station in a recorded interview.

36. Defendants John Doe #1 & 2 reviewed Plaintiff's social media prior to meeting with Plaintiff and referenced Plaintiff's content in the interview.

11

37. Plaintiff advised Defendant Detectives #1 & 2 that he did not have any information he thought would be useful, except that Plaintiff knew personally that Aaliyah Keef was at Plaintiffs house when Morah was killed.

38. Defendant Detective #'s 1 & 2 repeatedly attempted to shift focus to Plaintiff and his whereabouts, "we know you were there" etc.

39. Seeing that Defendants were desparate to attach any name they could to the homicide, Plaintiff invoked his right to remain silent and asked if he was free to leave.

40. Immediately after, Defendant Detective John Doe #2 stated, "we'll just charge you then."

41. Plaintiff left the police station without stating whether he witnessed the shooting, or not, or whether he was there, or not.

42. Plaintiff specifically told police that he did not feel comfortable repeating rumors as if they were facts personally known to Plaintiff.

12

43. Defendants Detectives John Doe's 1 & 2 grew so
    noticably loud and frustrated with plaintiff
    that other officers began approaching the
    interview room.

44. Defendant's Detectives John Doe's #1 & 2 immedi-
    ately began concocting a story to criminalize
    Plaintiff as retaliation for invoking his constituti-
    onal right to remain silent.

45. Specifically, Defendant's Detectives John Doe's #1 & 2
    contacted Defendant Chardo to enlist his assistance
    in criminally charging Plaintiff as retaliation
    for exercising a legal right.

46. Defendant Chardo did further Defendant Detectives
    John Doe's #1 & 2 conspiracy upon being briefed
    on Plaintiff's encounter with Detectives and concealing
    those facts from the judge from whom he sought
    a warrant for Plaintiff's arrest.

47. As a result of Defendant Chardo and Detectives
    John Doe's #1 & 2 concerted actions, or inactions,
    plaintiff was criminally charged and arrested
    the following day, on or about July 14, 2023

13

48. Again, knowing that Plaintiff could not walk, Defendant's formed an armed police force to apprehend and arrest Plaintiff while leaving his home.

49. None of the defendant's received any information that Plaintiff was in any way a part of the argument(s) leading upto Morah's death.

50. No witness said they saw Plaintiff shoot at anyone or saw Plaintiff at all.

51. Defendants had zero evidence that Plaintiff committed a crime.

52. Defendant's had not located any of the shooters who killed Morah at the time Plaintiff was arrested.

53. An investigative report generated by Harrisburg police, and seen by Defendant Chardo, acknowledged that plaintiff was not suspected of possessing a firearm.

54. None of the above stopped Defendant's from charging Plaintiff with "discharging a firearm" and related offenses.

14

PENN LIVE NEWS

55. Paragraphs 1-54 of this complaint are incorporated herein by reference as if set forth in full detail.

56. Defendant Penn Live News is a company that reports on crime and other news.

57. Defendant Penn Live News reports news live and through social media "feeds."

58. The nature of Defendant Penn Live News' business is that to be a relevant news company they must get the information first, slant the story differently and/or manipulate social media algorithms to ensure their stories are widely heard.

59. Financial gain is a direct motive for, and result of, reporting news, particularly via social media feeds.

60. Defendant Penn Live News reported on the murder of Morah multiple times.

61. Defendant Penn Live News researched Plaintiff and was aware of his influence online.

15

62. Defendant Penn Live News generated an article mentioning plaintiff by name as being involved in Morah's murder several times.

63. Specifically, on July 13, 2023, Defendant Penn Live News posted an article stating that plaintiff told police he did not know what happened and that he was at home at the time Morah was killed.

64. On July 26, 2023 Defendant Penn Live News again published an article through Defendant Wise stating that surveillance footage showed plaintiff in the drivers seat of the Murrano prior to the shooting and Morah being killed.

65. Defendants Wise and Penn Live rvews did not act diligently to verify the information about plaintiff prior to posting online.

66. Defendant's Wise and Penn Live News were aware of the negative impact their articles would have on plaintiff's name, reputation and income as a social media infuencer.

67. It is a complete falsehood that surveillance footage shows plaintiff driving morah to the site where he was killed.

68. It is materially false that plaintiff told police he was at home when morah was killed. *

69. The combined effect of Defendants' falsehoods gave the impression that plaintiff was part of a drive-by shooting, set up morah to be killed or was in some other manner responsible for his death.

70. Defendant's Penn Live News and Wise were compensated for their stories regarding morah's murder.

71. Defendants echoed Police Detectives voices in noting Plaintiff was charged with "discharging a firearm."

72. Not a single person stated at any time that

17

* Plaintiff stated that Aaliyah keef was at his house at that time. Plaintiff was asked where he was at to know this, he told them there with her but flatout told police if they were asking him personally the interview was over.

had a firearm or shot at anyone.

73. In fact, the investigation revealed that Plaintiff was not involved in the dispute(s) leading upto Morah's death and that the people responsible did not even know Plaintiff existed.

74. After discovering the truth, none of the Defendants updated the public or apologized to Plaintiff.

75. Plaintiff continues to receive hate mail online and other damages.

## DAUPHIN COUNTY PRISON $50,000 BOND

76. Paragraphs 1-75 of this complaint are incorporated herein by reference as if set forth in full detail.

77. The concerted acts, or inactions, of Defendants caused Plaintiff to be finger-printed and incarcerated at the Dauphin County Prison with a $50,000 bond to be released.

78. Plaintiff's incarceration caused more negative publicity online and word of mouth.

79. Plaintiff posted $50,000 bond non-refundable and was released on or about August 1, 2023.

80. Within days of Plaintiff being released, federal agents arrested plaintiff at gun point because the charges were a violation of his federal parole conditions.

81. Plaintiff was again incarcerated at DCP, this time without a bond.

82. A federal judge held Plaintiff's detention hearing on the question of whether Plaintiff would remain incarcerated while defending the charges.

19

82. The federal prosecutor requested and was granted two days to investigate the case.

83. Plaintiff appeared before the Judge again. At that hearing, the federal prosecutor declined to pursue the matter and directed plaintiff's release.

84. Notably, the federal prosecutor found that there were 'unanswered questions' in the charging papers and essentially could not understand why plaintiff was charged.

85. The charging papers against Plaintiff regarding Morah's death are facially flawed and legally insufficient to support a charge of discharging a firearm specifically, or any other charge.

86. Defendants Dectective John Doe's #1 & 2 and Chardo eventually dismissed all charges against plaintiff.

87. Defendants did not publicly inform the public about the outcome of the or acknowledged Plaintiff's non-involvement.

## TARGETTED FOR HARASSMENT

88. Paragraphs 1-87 of this complaint are incorporated herein by reference as if set forth in full detail.

89. Following Plaintiff being charged, jailed multiple times and hung to dry in the media, Defendant Sesquehanna Twp. Police Department joined and furthered Defendants' conspiracy to retaliate against plaintiff.

90. Defendants's "STPD" placed plaintiff on a "watch list" in collaboration with defendant's Chardo and Detectives John Doe #1 & 2.

91. Defendant's placement of plaintiff on their watch list was consequential to plaintiff being named in the system and in Penn Live News feeds as someone involved in a murder case.

92. Prior to plaintiff being criminally charged, he had no criminal contact with any of the defendants nor was plaintiff the subject of any investigations.

93. After being criminally charged, the amount of times Harrisburg PD and STPD followed or pulled plaintiff over quadrippled.

94. In furtherance of this campaign of harassment, STPD defendant's Jane Doe #1 & John Doe #3 pulled Plaintiff over on or about February, 2024.

95. Plaintiff was driving through an alley in an attempt to park in front of his friends house.

96. While Plaintiff attempted to park, Defendant's Jane Doe #1 & John Doe sped up behind Plaintiff forcing Plaintiff onto the street. Plaintiff veered left thinking they were trying to pass.

97. Defendant's immediately turned on their emergency lights, pulled Plaintiff over 5 feet away and stated Plaintiff failed to use his left turn signal to turn left.

98. Plaintiff was a licensed driver covered by insurance at the time of this event.

99. Plaintiff complied with defendants' directives to provide identification.

100. Defendants then attempted to engage Plaintiff in meaningless conversation about NFL sports as a ploy to turn the stop into a search. When

22

plaintiff told defendants he did not watch football and felt they were wasting his time, they said plaintiff was acting "suspicious" and ordered him to step out of the car.

101. In a recorded encounter that was also being observed by neighbors, Defendants accused plaintiff of drug trafficing.

102. Plaintiff declined to give consent to search, defendants sought and obtained a warrant by lying to a judge.

103. An hour + search of the car uncovered no drugs or evidence of illegal activity, despite alleged "false positive" by police dog

104. What Defendants did find in the trunk was a basket of pre-packaged "winner's circle" T-shirts bearing his company name/logo.

105. Plaintiff's "winner's circle" campaign was a widely publicized youth empowerment agenda

106. Defendant's released plaintiff but continued to harass and follow him for months.

## LOSS OF CELEBRITY CLIENT

107. Paragraphs 1-106 of this complaint are incorporated herein by reference as if set forth in full detail.

108. At the time Defendants launched these criminal charges against Plaintiff, Plaintiff had a signed and active contract with Kierra LUV as her booking agent.

109. Kierra LUV is a Youtube Sensation and Harrisburg native who has gone viral for rapping in the millions numerous times.

110. Celebrities such as Cardi B, Chance The Rapper, Steph Curry and numerous others have publicly supported or collaborated with Kierra Luv.

110. On the day of Plaintiff's arrest for these charges Plaintiff had a meeting with an entertainment label in California seeking a $250,000 cash advance for Kierra.

111. The same week of Plaintiff's arrest Plaintiff had another meeting with an entertainment executive in New York who worked with celebrities such as Dave East and The Lox.

24

112. Immediately upon Plaintiff's release on bail for these charges, Kierra sent Plaintiff a text essentially firing Plaintiff as her booking agent, specifically citing the fake news surrounding these charges as her reason.

113. As her booking agent, Plaintiff was the point of contact for all deals or contracts regarding Kierra and her brand, on and offline, at the rate of 15% per transaction.

## IV. LEGAL CLAIM(S)

You are not required to make legal argument or cite any cases or statutes. However, state what constitutional rights, statutes, or laws you believe were violated by the above actions. If you intend to assert multiple claims, number and set forth each claim in separate paragraphs. Attach additional pages if needed.

### MUNICIPAL LIABILITY

114. Defendant's Harrisburg Police Department and John Does #1 & 2, in collaboration or conspiracy with Defendant Chardo, criminally charged Plaintiff selectively and as retaliation for Plaintiff exercising his constitutional right to remain silent as part of a policy, practice or custom of using police tactics, torture, incarceration, & public slander in the news / community to coerce cooperation in police investigations and unfairly gain convictions through plea deals & are deliberately indifferent to said practices.    continued →

## V. INJURY

Describe with specificity what injury, harm, or damages you suffered because of the events described above.

Incarceration, mental, emotional, loss income, loss celebrity contract, damage to reputation online & local, bail expenses. Projected impact exceeding $10 million dollars.

## VI. RELIEF

State exactly what you want the court to do for you. For example, you may be seeking money damages, you may want the court to order a defendant to do something or stop doing something, or you may be seeking both types of relief. If you are seeking monetary relief, state your request generally. Do not request a specific amount of money.

Compensatory, declaratory, nominal and injunctive relief, fire all parties involved.

26

115. Defendant's STPD are deliberately indifferent to a policy, practice or custom of police fabricating reasons to pull over Harrisburg residents to cover up the molestation of 4th Amendment rights under the U.S. constitution, using "false positives" of police dogs to further this agenda and retaliation for refusing to consent to search, all under a code of silence & failure to train.

116. Defendant's STPD, in collaboration and conspiracy with Defendant Chardo are deliberately indifferent to a policy, practice or custom of rewarding police for pullovers with titles, raises or other benefits when said practices are implemented in ways that target citizens on the basis of race, creed, or nationality and encourage violations of the 4th Amendment right to be free from unreasonable searches and seizures.

117. All of the Municipal defendants and their subordinates are said to have acted under an unconstitutional "code of silence", in that, through creating or adopting a practice of police officers / their supervisors refusing to "snitch" or be truthful in writing reports on police interactions with U.S. citizens,

27

Plaintiff and others are being denied due process before the process even begins.

## STATE LAW TORTS

118. Paragraphs 1-113 of this complaint are incorporated herein by reference as if set forth in full detail, and are said to state a claim for violations of plaintiff rights under state law

(a) each time defendants drew guns on plaintiff threatening to kill him;

(b) interference with contract (kierra Luv);

(c) slander, defamation, liebel "fake news";

(d) assault

(e) false arrest

(f) false imprisonment

(g) intentional infliction of emotional distress.

## VII.    SIGNATURE

By signing this complaint, you represent to the court that the facts alleged are true to the best of your knowledge and are supported by evidence, that those facts show a violation of law, and that you are not filing this complaint to harass another person or for any other improper purpose.

Local Rule of Court 83.18 requires *pro se* plaintiffs to keep the court informed of their current address. If your address changes while your lawsuit is being litigated, you must immediately inform the court of the change in writing. By signing and submitting the complaint form, you agree to provide the Clerk's Office with any changes to your address where case-related papers may be served, and you acknowledge that your failure to keep a current address on file with the Clerk's Office may result in dismissal of your case.

_____
Signature of Plaintiff

NOV. 14, '24
_____
Date



NAME: Andre Jacobs
D.C.P. # 054218
DAUPHIN COUNTY PRISON
501 MALL ROAD
HARRISBURG, PA 17111-1299





RECEIVED
HARRISBURG, PA

NOV 26 2024

PER____ DEPUTY CLERK

Office of the Clerk
United States District court
Middle District of pennsylvania
1501 N. 6th st
Harrisburg, PA 17102