**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANDRE JACOBS, Plaintiff, | : | NO. 1:24-CV-02053 |
| | : | (KANE, D.J.) |
| v. | : | |
| | : | (CAMONI, M.J.) |
| HARRISBURG POLICE DEPARTMENT, *et al.*, Defendants. | : | |

## REPORT AND RECOMMENDATION

## I. INTRODUCTION

Pending before the Court are three motions to dismiss the Amended Complaint of Plaintiff Andre Jacobs (Doc. 23), proceeding *pro se*, filed by: 1) Defendant Susquehanna Township Police Department ("STPD") (Doc. 24); 2) Defendants Penn Live News and Jenna Wise ("Media Defendants") (Doc. 26); and 3) Defendants Harrisburg Police Department ("HPD") and Police Commissioner Thomas C. Carter (Doc. 28). The undersigned respectfully recommends that the Court grant the Defendants' motions to dismiss because the Plaintiff fails to state any claim for which relief may be granted.

## II. BACKGROUND

### A. Procedural History

On November 26, 2024, Plaintiff, Andre Jacobs, commenced this *pro se* action against six named defendants: STPD, HPD, District Attorney Francis T. Chardo,[1] Commissioner Carter, the Media Defendants, and several "John Doe" and "Jane Doe" detectives and police officers. Complaint, Doc. 1. On April 14, 2025, Plaintiff filed a motion for leave to amend his Complaint[2] (Doc. 21), which was granted and filed on April 18, 2025. Doc. 23. Subsequently, STPD, the Media Defendants, and HPD and Carter filed motions to dismiss. Docs. 24, 26, 28. Thereafter, Plaintiff filed briefs in opposition (Docs. 36, 42, 48), to which HPD and Carter and the Media Defendants replied (docs. 39, 49). Thus, all three motions are ripe for disposition.

---

[1] The record reflects no proof that Defendant Chardo has been served in this case, and he has neither entered an appearance nor filed a motion to dismiss.

[2] It appears that on April 18, 2025, Carter was dismissed from this case because Plaintiff's Amended Complaint no longer names him as a defendant. Because the Plaintiff is proceeding *pro se* and the parties discuss Carter's role in the events at issue in their briefs, the undersigned will nonetheless analyze Carter's motion to dismiss, out of an abundance of caution.

### B. Factual Background[3]

As alleged, Plaintiff, a 42-year-old African American man, is a community activist and social media influencer who makes "controversial" videos regarding police brutality and corruption, prison conditions, and mistreatment of poor people. Doc. 23 ¶¶ 11, 12, 15. His videos, he claims, attract millions of views and are popular enough to generate celebrity interest and personal income. *Id.* ¶¶ 13, 14, 18. Additionally, Plaintiff moonlit as a booking agent for a burgeoning artist. *Id.* ¶¶ 112, 117.

On July 12, 2023, Defendants Detectives John Does #1 and #2 conspired to frame Plaintiff for the death of Morah Crittenden, who died in a gun fight. *Id.* ¶¶ 1, 21. They circulated a memo within the Harrisburg Police Department calling for the apprehension of Plaintiff by force on a pretext, which caused John Does #4-10 to surround, handcuff, and threaten to shoot Plaintiff in front of a crowd of people. *Id.* ¶¶ 22, 23, 30. The car Plaintiff was driving at the time had been reported stolen by Jane

[3] In considering these motions to dismiss, the Court accepts all factual allegations in the Amended Complaint as true and draws all inferences from the facts alleged in the light most favorable to Plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

Doe #2. Officers informed Jacobs he was wanted for questioning in the Crittenden case and released him. ¶ 32-33.

The next day, at the Harrisburg police station, Plaintiff voluntarily spoke with detectives, John Does #1 and #2, in a recorded interview, during which they attempted to connect Plaintiff with Crittenden's death. *Id.* ¶¶ 35-40. After Plaintiff refused to provide additional information, they allegedly remarked "'[w]e'll just charge you then,'" knowing that "this would destroy Plaintiff's reputation and business." *Id.* ¶¶ 40- 41. To further their conspiracy, the detectives enlisted District Attorney Chardo to charge Plaintiff for Crittenden's death in retaliation for Plaintiff's exercising his Fifth Amendment right to remain silent, and in the process to obtain an arrest warrant for Plaintiff by concealing material facts from the judge. *Id.* ¶¶ 46-49.

Meanwhile, the Media Defendants furthered the conspiracy of the detectives and Chardo by using the conspirators' false information to publish defamatory articles connecting Plaintiff to Crittenden's death. *Id.* ¶¶ 63, 65. On July 13, 2023, Penn Live News reported that Plaintiff told police that he was unaware of Crittenden's activities and was at home when Crittenden was killed. *Id.* ¶ 66. On July 26, 2023, Penn Live

News falsely reported that video evidence showed Plaintiff in the driver's seat of a car involved in Crittenden's murder. *Id.* ¶ 67. As alleged, the Media Defendants published these articles without conducting due diligence and knowing that they would harm Plaintiff's public reputation. *Id.* ¶¶ 70-73.

Defendants' actions led to Jacobs's arrest and detention. ¶¶ 79-81, 84-85. After his release, police officials continued to pursue Plaintiff, placing him on a "watch list." ¶ 91. This led the Media Defendants to assert that Plaintiff was involved in the murder case and HPD to follow, harass, and stop Plaintiff on the road for months. *Id.* ¶¶ 94-109. Plaintiff also missed business meetings and lost a client because of the arrest and news regarding his criminal charge. *Id.* ¶¶ 114-117.

Plaintiff levels several claims against Defendants. He maintains that HPD and Officers John Doe #1 and #2 conspired or collaborated with Carter and Chardo to selectively charge Plaintiff in retaliation for exercising his Fifth Amendment right. *Id.* ¶ 119. He also accuses HPD and STPD of deliberate indifference to their organizations' unconstitutional policies, practices, and customs. *Id.* ¶¶ 119, 121, 123.

Additionally, Plaintiff alleges that Carter and Chardo failed to train their subordinates. *Id.* ¶ 120.

Further, Plaintiff claims several state law violations, without specifying the perpetrators of the violations alleged. Plaintiff claims assault, interference with contract, defamation, false arrest, false imprisonment, intentional infliction of emotional distress, and negligence. *Id.* ¶ 124.

## III. LEGAL STANDARD

### A. Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As the Third Circuit has explained, at its core, Rule 8 fundamentally "requires that a complaint provide fair notice of 'what the . . . claim is and the grounds upon which it rests.'" *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019), citing *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). "Under Rule 8(a)(2), a complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id*. at 92, citing Fed. R. Civ. P. 8(a)(2). While a complaint filed by a *pro se* litigant is to be liberally construed, *pro se* litigants must still

allege sufficient facts in their complaints to support a claim and must satisfy the requirements of Rule 8. *Mala v. Crown Bay Marina*, Inc., 704 F.3d 239, 245 (3d Cir. 2013); *Purisima v. City of Philadelphia*, 738 F. App'x 106, 107 (3d Cir. 2018). Dismissal pursuant to Rule 8 is appropriate where a defendant is left "to guess what of the many things discussed constituted [a cause of action]," *Binsack v. Lackawanna County Prison*, 438 F. App'x 158, 160 (3d Cir. 2011) and where a complaint is "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995).

On a Rule 12(b)(6) motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation modified).

A district court must conduct a three-step analysis when considering the sufficiency of a complaint under Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*,

556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *Iqbal*, 556 U.S. at 678, citing *Twombly*, 550 U.S. at 555. Third, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211, quoting *Iqbal*, 556 U.S. at 679. A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210, quoting *Iqbal*, 556 U.S. at 678. On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

Additionally, a complaint filed by a *pro se* litigant is to be liberally construed and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94, quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Nevertheless,

"pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala*, 704 F.3d at 245. Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Even a *pro se* complaint must recite factual allegations that are enough to raise the Plaintiff's claimed right to relief beyond the level of mere speculation.

### B. Jurisdiction

The Court has subject matter jurisdiction because the Plaintiff alleges claims under federal statutes. District Courts have jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States" pursuant to 28 U.S.C. § 1331. Further, the district court has referred this case to the undersigned pursuant to 28 U.S.C. § 636, which authorizes, among other things, the undersigned Magistrate Judge to prepare reports and recommendations on potentially dispositive matters.

## IV. ANALYSIS

Plaintiff fails to state any claim upon which relief can be granted. Plaintiff does not specify any federal cause of action, and, even upon a broad reading of the *pro se* Amended Complaint, the undersigned can

discern no claims that might survive dismissal under the Rule 12(b)(6) standard.

### A. Susquehanna Township Police Department

Plaintiff maintains that STPD was deliberately indifferent to a policy, practice, or custom in which police officers stopped motorists to investigate crimes, using the pretext of traffic violation stops, thereby violating Plaintiff's Fourth Amendment rights. Doc. 23 ¶ 121. Additionally, Plaintiff posits that through the actions of their subordinates, STPD, Chardo, and Carter violated Plaintiff's due process rights by creating false reports of encounters with civilians. *Id.* ¶ 123. Defendants argue that Plaintiff has not alleged any specific training that was deficient or absent to support his claims. Doc. 24-1 at 4.

An individual may bring an action for injunctive and declaratory relief against a local government under 42 U.S.C. § 1983. *Kentucky v. Graham*, 473 U.S. 159, 166 n.14 (1985). To succeed on this claim, two criteria must be met: 1) the conduct complained of must have been committed by a person "acting under color of state law;" and 2) the conduct must deprive the Plaintiff of rights secured under the

Constitution or federal law. *Sameric Corp. of Del. v. City of Philadelphia*, 142 F.3d 582, 590 (3d Cir. 1998).

To the extent Jacobs intends to bring a § 1983 action against STPD, those claims founder on an insurmountable legal obstacle—the police department is not a proper defendant in a § 1983 lawsuit. It has long been held that a police department is not a proper institutional defendant under § 1983, because a police department serves only as an administrative arm of a municipality, and it is a municipality through which any liability must flow to the police department. Indeed, it has been repeatedly held that a police department is not a "person" for the purposes of § 1983 and therefore is not a proper defendant in a § 1983 action. *See*, *e.g.*, *McCreary v. Owen*, No. 21-1022, 2021 WL 11114949, at *6-7 (M.D. Pa. Dec. 6, 2021), *report and recommendation adopted*, No. 21-1022, 2021 WL 11114480 (M.D. Pa. Dec. 28, 2021); *Blackwell v. Middletown Borough Police Dep't*, 12-825, 2012 WL 6012568 (M.D. Pa. Nov. 16, 2012), *report and recommendation adopted*, 12-825, 2012 WL 6002689 (M.D. Pa. Nov. 30, 2012), citing *Golya v. Golya*, No. 5-100, 2007 WL 2301085, *9 (M.D. Pa. 2007) (explaining that courts within the Third Circuit have concluded that a police department is merely a sub-unit of

the local government and is not amenable to suit under § 1983); *Johnson v. City of Erie*, 834 F. Supp. 873, 879 (W.D. Pa. 1993) (Courts that have considered whether a municipal police department is an appropriate party to suit under § 1983 have unanimously found that it is not.)

However, a municipality can be held liable under § 1983 if its policies or customs, including its training program for its employees, caused a constitutional injury to a plaintiff. *See City of Canton v. Harris*, 489 U.S. 378, 389 (1989). To state a § 1983 claim against a municipality, a plaintiff must provide facts to demonstrate that the constitutional harm was caused by an official government custom or policy. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). A municipal custom or policy may be illustrated by reference to an express, codified policy, or a particular practice that is so permanent and well-settled that it constitutes law, even if it is not legally authorized. *Beck v. City of Pittsburgh,* 89 F.3d 966, 971 (3d Cir. 1996). Plaintiff must also show that the "[municipality's] policies are the moving force behind the constitutional violation." *Harris,* 489 U.S. at 389 (citation modified).

Further, to succeed on a failure to train claim, Defendants' failure to train its employees must reflect a deliberate or conscious choice by the

municipality, such that one could call it a policy or custom. *Id.* at 388-89; *Walker v. N. Wales Borough*, 395 F. Supp. 2d 219, 226 (E.D. Pa. 2005). Merely alleging that a training program represents a policy for which the city is responsible does not suffice. *Harris,* 489 U.S. at 389. Likewise, alleging that a particular officer is "unsatisfactorily trained will not alone suffice to fasten liability on the city[.]" *Id.* at 390. Instead, "the focus must be on whether the program is adequate to the tasks the particular employees must perform." *Id.* at 379. Liability for a failure to train arises "only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the [constitutional] rights of its inhabitants." *Walker*, 395 F. Supp. 2d at 226, citing *Harris,* 489 U.S. at 389.

Even if Plaintiff had sued the proper defendant, Plaintiff's *Monell* claims should still be dismissed because Plaintiff has not pled sufficient facts to 1) identify an unconstitutional policy or practice that STPD employed, or 2) demonstrated that he suffered a cognizable constitutional harm. According to Plaintiff's Amended Complaint, he seems to allege that STPD's custom or policy of stopping motorists under a pretext of traffic violations infringed upon his Fourth Amendment right against

unreasonable searches and seizures and his Fourteenth Amendment right to due process. Doc. 23 ¶¶ 89-109, 121.

Fatal to Jacobs's claims is the fact that it is not unconstitutional for officers to stop a motorist for violating traffic laws to investigate different crimes. A police stop is warranted any time a motorist violates a traffic code, even if the stop is merely a pretext to investigate some other crime. *United States v. Mosley*, 454 F.3d 249, 252 (3d Cir. 2006), citing *Whren v. United States*, 517 U.S. 806 (1996). Thus, as long as an officer has reasonable suspicion to believe that the motorist has indeed committed a traffic violation, the officer neither engages in an unconstitutional practice nor violates the motorist's Fourth Amendment rights when the officer stops them.

Here, STPD's alleged "policy, practice, or custom" was not unconstitutional and did not violate Plaintiff's Fourth Amendment rights. Doc. 23 ¶ 122. Police officers stopped Plaintiff for a legitimate traffic violation—failing to use his left turn signal—which Plaintiff acknowledges. Doc. 30 ¶ 98. Whether the traffic stop was pretext to investigate Plaintiff for a different crime is beside the point and does not convert the legal practice to an illegal one subject to liability under

§ 1983. Moreover, Plaintiff admits that officers obtained a search warrant before they searched his vehicle. *Id.* ¶ 105. Thus, Plaintiff's Fourth Amendment rights were also not violated when officers searched his vehicle. Although Plaintiff alleges in a conclusory manner that officers obtained the warrant "by lying to a judge about what prompted the request," Plaintiff provides no facts to support this assertion. *Id.* The Court is bound to disregard allegations that do not rise above mere "labels and conclusions." *Twombly*, 550 U.S. at 555. Therefore, Plaintiff's claim that STPD's practice of officers "fabricating reasons to pull over Harrisburg residents in traffic stops" violated his Fourth Amendment rights is meritless and should be dismissed. Doc. 23 ¶ 121. And because the claim is fatally flawed, amendment to replace STPD with the municipality as defendant would be futile.

Although Plaintiff additionally asserts that Defendants violated his due process rights, he does not provide any facts to demonstrate how Defendants did so. Again, such conclusory allegations alone are inadequate to survive a motion to dismiss. *Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of

a cause of action's elements will not do . . . Factual allegations must be enough to raise a right to relief above the speculative level”). Therefore, all federal claims against STPD should be dismissed.

### B. Harrisburg Police Department and Police Commissioner Carter

#### i. Harrisburg Police Department

Plaintiff accuses HPD of 1) maintaining an unconstitutional policy or practice of using police tactics to coerce individuals to cooperate in police investigations and convict them, and 2) conspiring with Carter and Chardo to criminally charge Plaintiff in retaliation for his exercise of his right to remain silent. Doc. 123 ¶ 119. HPD asserts that Plaintiff's claims against it “must be dismissed with prejudice because the Bureau is not a proper party subject to suit under Section 1983.” Doc. 30 at 8.

For the same reasons that dismissal of these claims against STPD is appropriate, the claims against HPD should be dismissed. Plaintiff has not alleged sufficient facts to make a plausible claim that HPD maintained or exercised any unconstitutional policy or practice, and HPD is immune from § 1983 liability. *Johnson,* 834 F. Supp. at 878–79.

**ii. Commissioner Carter**

Next, Plaintiff claims that Defendant Carter (along with HPD, STPD, and others): 1) selectively prosecuted Plaintiff in retaliation for exercising his Fifth Amendment right to remain silent (Doc. 23 ¶ 119); 2) failed to train his subordinates (*id.* ¶ 120); 3) conspired with STPD and D.A. Chardo to encourage police officers to violate his Fourth Amendment right against being unlawfully searched and seized; and 4) acted through his subordinates to engage in an unconstitutional "code of silence" policy, practice, or custom. Doc. 23 ¶ 123. Carter asserts that the claims should be dismissed because he is entitled to qualified immunity. Doc. 30 at 13.

To determine whether qualified immunity attaches, courts consider 1) whether the facts that the Plaintiff alleges make out a violation of a constitutional right; and 2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *Kedra v. Schroeter*, 876 F.3d 424, 434 (3d Cir. 2017), citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Qualified immunity protects government officials from liability for civil damages if "their conduct does not violate clearly established statutory or constitutional rights" that a reasonable person would know of. *Pearson*, 555 U.S. at 231. Qualified

immunity applies even in cases in which the government official makes "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.* at 231 (citation omitted). It grants protection from suit and is not merely a defense to liability; therefore, qualified immunity "is effectively lost if a case is erroneously permitted to go to trial." *Id.*, quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

Qualified immunity applies here because Plaintiff has not alleged that Defendant Carter violated any of his constitutional rights. Plaintiff himself admits that he is unaware of Carter's involvement in the events described in his Amended Complaint. Doc. 36 at 6 ("the extent of defendant Carter's role in facilitating the charges in this case is unknown."). Moreover, the Amended Complaint is devoid of individual factual allegations against Carter. The first time Plaintiff even mentions Carter is when he accuses him of violating Plaintiff's Constitutional rights in conclusory fashion. Doc. 23 ¶ 119. Plaintiff hurls allegations against him with no factual support.

To successfully defend against a motion to dismiss, a Plaintiff must assert sufficient facts to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 570. Here,

Plaintiff merely provides "allegations that . . . are no more than conclusions," and thus "are not entitled to the assumption of truth." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). For these reasons, the Court should dismiss all claims against Defendant Carter.

**C. Media Defendants**

Plaintiff alleges that the Media Defendants furthered the other defendants' conspiracy to destroy Plaintiff's reputation and retaliate against him by publishing articles, based on false information, connecting Plaintiff to the murder. Doc. 23 at 10-11. The Media Defendants argue that Plaintiff's claims are barred by the statute of limitations. Doc. 26 at 3.

Plaintiff responds that he was precluded from bringing his claim earlier because he was involved in a related criminal trial, the facts of which were inextricably intertwined with his defamation claim, and thus his claims should be equitably tolled. Doc. 48 at 5-6. Nonetheless, Plaintiff's claims against the Media Defendants should be dismissed as untimely. Even if the statute of limitations had not passed, Plaintiff cannot plead sufficient facts to make out a defamation claim.

A plaintiff has one year from the date of publication to bring a defamation claim in Pennsylvania. *In re Philadelphia Newspapers, LLC*, 690 F.3d 161, 174 (3d Cir. 2012), citing 42 Pa. Cons. Stat. § 5523. Although republication of defamatory material resets the statute of limitations, *McClenaghan v. Turi*, 567 F. App'x 150, 154 (3d Cir. 2014), the "continuous availability" of published material does not. *Graboff v. Am. Ass'n of Ortho. Surgeons*, 559 F. App'x 191, 195 (3d Cir. 2014).

Here, Defendants published the allegedly offending articles on July 13 and 26, 2023. Doc. 23 at 10-11. Plaintiff initiated this lawsuit on November 26, 2024—almost a year and a half after the publication. Doc. 1. Plaintiff's time to properly bring this claim was not renewed because Defendants did not re-publish the article but merely retained it on their website. Therefore, the time in which Plaintiff could bring his defamation claim lapsed, and this claim should be dismissed.

Even if the Court could equitably toll the statute of limitations (and Plaintiff has supplied no legal authority for this Court to do so), Plaintiff's claim still fails because he has failed to plead sufficient facts to suggest that Defendants possessed the requisite malicious intent to be liable for defamation. The Supreme Court of Pennsylvania has recognized "that

defamation includes a requirement [that] the plaintiff prove a constitutionally-mandated minimum level of fault in order for the court to impose liability on a media defendant." *Joseph v. Scranton Times L.P.*, 129 A.3d 404, 428 (Pa. 2015). The minimum level of fault differs based on whether the plaintiff is a public or private figure. *Id.* A person may be deemed a limited public figure if he either behaves in a way "that invites attention and general public discussion, even though such attention is neither sought nor desired" or he is involved in a "particular public controversy." *Monge v. Univ. of Pa.*, 674 F. Supp. 3d 195, 211 (E.D. Pa. 2023) (citation modified). A public controversy is "a real dispute, the outcome of which affects the general public or some segment of it," and the plaintiff's involvement in the controversy must be voluntary. *Id.*

At the pleading stage, a limited public figure must allege facts to support an inference of actual malice: knowledge that the statement was false or was made with reckless disregard as to its truth or falsity. *Id.* at 211-12. (citation modified). To satisfy the reckless disregard element, a plaintiff must show that the defendants "entertained serious doubts as to the truth" of the published statements. *Id.* at 212 (citation omitted). Without more, proof of a party's failure to investigate is inadequate to

demonstrate reckless disregard; rather, the publisher must act with a high degree of awareness of the probable falsity. *Id.*

Plaintiff has alleged facts sufficient to demonstrate that he is a limited public figure. His videos regarding police brutality and other social maladies, which are public controversies, allegedly attract millions of viewers on social media. Doc. 23 ¶¶ 13-15. Therefore, Plaintiff carries the higher burden of alleging facts to support an inference of actual malice. He must provide facts to suggest that the Media Defendants knew that the statements they made were false or made them with reckless disregard as to their truth or falsity. *Monge*, 674 F. Supp. 3d at 212.

Plaintiff has failed to do this. Not only does Plaintiff fail to provide any facts to indicate that the Media Defendants acted with actual malice, the Amended Complaint suggests the opposite. Plaintiff alleges that the Media Defendants relied on the information provided by the Police Commissioner and police detectives to write their articles. Doc. 23 ¶ 65. Further, he claims that the Media Defendants would have discovered their incorrect statements had they "acted diligently to verify the information about Plaintiff prior to posting online." *Id.* ¶ 70. Plaintiff's allegations that the Media Defendants relied on the police department

for information undermine the assertion that Defendants published the articles with knowledge of or reckless disregard to their falsity. And a party's failure to investigate, without more, is inadequate to demonstrate actual malice. *Monge*, 674 F. Supp. 3d at 212. Therefore, Plaintiff's claim fails and should be dismissed.

**D. State law violations**

Finally, Plaintiff's remaining state law claims should also be dismissed. The Amended Complaint fails to specify which party Plaintiff is accusing of what harm, which consequently does not put the appropriate parties on notice, in contravention of Rule 8. *Bartol v. Barrowclough*, 251 F. Supp. 3d 855, 860 (E.D. Pa. 2017). Plaintiff seemingly accuses the municipal Defendants, in conclusory manner, of assault, contract interference, false arrest, false imprisonment, intentional infliction of emotional distress, and negligence. Doc. 23 ¶ 124(a)–(g). His claims lack the requisite specificity to go forward.

Additionally, those Defendants are immune from liability under the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa.C.S. § 8541, et seq., which states that "[e]xcept as otherwise provided in the subchapter, no local agency shall be liable for any damages on

account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." The Act grants broad immunity to municipal defendants based on intentional conduct, only waiving it with respect to eight narrow categories of negligent acts, none of which apply in the instant case. *Walker*, 395 F. Supp. 2d at 230.[4]

Because they fail to meet the Rule 8 standard, and because STPD and HPD are immune under the PSTCA, and none of the exceptions apply here, Plaintiff's state law claims should be dismissed.

## V. LEAVE TO AMEND

The Third Circuit instructs this Court to grant leave to amend when an *in forma pauperis* plaintiff has filed a complaint subject to dismissal under Rule 12(b)(6), unless amendment would be inequitable or futile. *Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017*); Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). Courts in the Third Circuit have denied plaintiffs additional opportunities to amend their complaints when, despite granting leave to amend, they continued to put forth frivolous claims or failed to cure deficiencies in their initial complaints.

[4] Moreover, the Court should decline to exercise supplemental jurisdiction over these claims once all federal claims are dismissed. 28 U.S.C. § 1367

*Mbewe v. Delbalso*, No. 21-654, 2023 WL 3513675, at *7 (M.D. Pa. May 17, 2023) ("further leave to amend will be denied as futile. [Plaintiff] has been given multiple opportunities to revise his pleadings, yet he has failed to cure the fundamental deficiencies therein even after 'amendments previously allowed'"), *aff'd*, No. 23-2054, 2024 WL 510500 (3d Cir. Feb. 9, 2024); *Moss v. United States*, 329 F. App'x 335, 336 (3d Cir. 2009) (affirming dismissal after plaintiff failed to amend illegible complaint).

Plaintiff has already been granted leave to amend, and his eighteen-page Amended Complaint still failed to allege facts to state a plausible claim against any Defendants. Additionally, no amendment can overcome or cure the types of deficiencies with which this Amended Complaint is rife. Thus, providing Plaintiff leave to amend his complaint for a second time will be futile and should not be granted.

## VI. RECOMMENDATION

Based on the foregoing, it is respectfully recommended that:

(1) The Defendants' motions to dismiss (Docs. 24, 26, 28) be **GRANTED**;

(2) The Amended Complaint (Doc. 23) be **DISMISSED** with prejudice; and

(3) The Clerk of Court be directed to close this case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses, or recommit the matter to the magistrate judge with instructions.

Date: February 9, 2026

s/*Sean A. Camoni*
Sean A. Camoni
United States Magistrate Judge